IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACE ROY DEVINE,<br><br>Defendant. | Cause No. CR 24-11-H-BMM<br><br><br>ORDER |

**INTRODUCTION**

A federal grand jury indicted Jace Roy Devine ("Devine") on one count of prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). (Doc. 1.) Devine filed a motion to dismiss the indictment (Doc. 36.) The Court held a hearing on the motion to dismiss on December 4, 2025. (Doc. 62.)

**BACKGROUND**

Officers from the Lewis and Clark County Sheriff's Office responded to a residence in Helena to investigate a report of a male trespassing on the property on March 15, 2024. (Doc. 41 at 2.) The officers found Devine alone in a running car that was parked on the property. (*Id.*) Devine was unconscious in the driver's seat with the keys in the ignition. (*Id.*) Officers found hypodermic needles, syringes,

1

tinfoil with blue pills, and burnt residue near Devine in the driver's seat area. (*Id.*) The officers arrested Devine for DUI and possession of dangerous drugs and paraphernalia. (*Id.*)

Lab reports showed the Devine had fentanyl, methamphetamine, and marijuana with him in the car. (*Id.*) Lab reports also showed that Devine had alcohol, fentanyl, and methamphetamine in his blood. (*Id.*) Officers found a Taurus handgun in a box on the dashboard right above the steering wheel. (*Id.*) Devine has incurred multiple substance-abuse related misdemeanors dating back to 2018. (*Id.* at 2-3.) These convictions provide some indication of long-term use and addiction to controlled substances.

The grand jury indicted Devine on May 20, 2024, on one count of prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). (Doc. 1.) The indictment also included a forfeiture allegation pursuant to 18 U.S.C. § 924(d). (*Id.*) Officers arrested Devine on June 28, 2024, and he appeared for his arraignment on July 2, 2024. (Doc. 8.) Devine was released from custody on August 12, 2024. (Doc. 27.)

Devine filed a motion to dismiss the indictment on February 18, 2025. (Doc. 36.) The Court has granted numerous continuances and extensions. The Court ordered the parties on October 30, 2025, to submit supplemental briefing on Devine's motion to dismiss. (Doc. 56.) The Court instructed the parties to focus on

Devine's as applied challenge using the factors outlined by *United States v. Harris*, 144 F.4th 154 (3d Cir. 2025). (*Id.*)

## LEGAL STANDARD

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." F. R. Crim. P. 7(c)(1). An indictment that contains the following information complies with Rule 7(c): 1) alleges each element of the crime charged, *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009); and 2) sets forth the essential facts necessary to inform the defendant of what he is charged, *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993).

These requirements ensure that the defendant possesses sufficient information to prepare a defense and plead double jeopardy if charged in a different case. *Awad*, 551 F.3d at 935. An indictment that "tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). The indictment is to "be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *Id*.

## DISCUSSION

The parties agree that *United States v. Stennerson*, 150 F.4th 1276, 1285 (9th Cir. 2025), foreclosed Devine's original facial challenge to the constitutionality of

§ 922(g)(3). Devine now challenges § 922(g)(3) as applied to him. Section 922(g)(3) prohibits persons who are unlawful users of, or who are addicted to, a controlled substance from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3).

The Court instructed the parties to file supplemental briefing focusing on Devine's as applied challenge using the factors outlined in *United States v. Harris*, 144 F.4th 154 (3d Cir. 2025). Devine submitted briefing addressing the *Harris* factors. (Doc. 58.) The Government responded and briefly addressed the *Harris* factors but primarily argued that the Court must apply Ninth Circuit precedent. (Doc. 61.) The Government contends that *Harris* conflicts with Ninth Circuit jurisprudence including *United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025), and *United States v. Stennerson*, 150 F.4th 1276, 1285 (2025). (*Id*.) The Court will address each argument.

I. History & Tradition

The Second Amendment guarantees that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. No question exists that § 922(g)(3) implicates the ability "to keep and bear Arms" as it provides for a categorical ban on possession of firearms. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 32 (2022). The Government must overcome the presumption that the Second Amendment constitutionally protects Devine's possession of

firearms. *Stennerson*, 150 F.4th at 1282. The Government must establish that our "historical tradition of firearm regulation" supports § 922(g)(3)'s restriction on gun possession by users of illegal drugs. *Stennerson*, 150 F.4th at 1282 (citing *Bruen*, 597 U.S. at 24). Modern laws pass this test if they are "'relevantly similar' to laws that our tradition is understood to permit," especially in "[w]hy and how [they] burden the right." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 29). Though our Second Amendment law looks to history and tradition, it is not "trapped in amber." *Rahimi*, 602 U.S. at 691. Modern regulations must rest on historical "principles" but need not be a "historical twin." *Id.* at 692.

    *Stennerson* concluded that "our nation's tradition of firearms regulation at least supports restricting possession of firearms by those who are presently intoxicated and, therefore, hindered in their ability to exercise sound judgment and self-control." 150 F.4th at 1285. The Ninth Circuit determined that "the restriction that [§ 922(g)(3)] imposes 'is consistent with the Nation's historical tradition of firearm regulation'" because it is facially constitutional at least in those circumstances. *Id*. (quoting *Bruen*, 597 U.S. at 24). The Fifth Circuit and Eighth Circuit have reached the same conclusion. *See United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024); *see United States v. Veasley,* 98 F.4th 906, 918 (8th Cir.), *cert. denied*, 145 S. Ct. 304 (2024). The Court faces the question of whether these

5

same historical analogs also support § 922(g)(3)'s restriction on gun possession as applied to Devine.

The Government argues that the Court need look no farther than *Duarte*. (Doc. 61 at 2-3.) *Duarte* concluded that § 922(g)(1) constitutionally may apply to the category including all felons because "legislatures may categorically disarm those they deem dangerous, without an individualized determination of dangerousness." *Duarte*, 137 F.4th at 755. The Government argues that this same logic can be applied here as *Duarte* obviates the need for an individualized assessment of dangerousness for each person within a class of prohibited persons. (Doc. 61 at 3.)

The Government cites several examples of historical bans that categorically prohibited classes of people from possessing firearms. (*Id*. at 3-4.) These historical examples reflect prejudicial and racially discriminatory animus, including bans on "Catholics, non-Anglican Protestants, Native Americans, slaves or freed Black people, and those who refused to swear loyalty oaths." (*Id.* at 4.) *Rahimi* instructs us to evaluate whether a class of people pose a "special danger of misuse." 602 U.S. at 682. *Duarte* acknowledges that these categorical bans may represent examples of abhorrent prejudices, but they also provide proof that legislatures considered overbroad, categorical disarmaments appropriate throughout history even when they swept-in "law-abiding people who were not dangerous, violent,

untrustworthy, or unstable." 137 F.4th at 761 (quoting *Range v. Att'y Gen. United States*, 124 F.4th 218, 267 (3d Cir. 2024) (Krause, J. concurring)). The Court does not fully grasp how *Duarte* properly expands *Rahimi*, yet it unquestionably does, and the Court remains bound by that holding.

    *Duarte* seems to suggest that any categorical ban may be constitutional if the legislature imposed the ban upon a class of people it perceived to be dangerous. The Government provides a collection of evidence to demonstrate that Congress enacted § 922(g)(3) as a broad effort to "keep firearms away" from certain groups of people "classified as potentially irresponsible and dangerous." (Doc. 61 at 4, citing *Barrett v. United States*, 423 U.S. 212, 218 (1976) and *Lewis v. United States*, 445 U.S. 55, 64 (1980).) Congressional debate on the ban included discussion about how "[n]o one can dispute the need to prevent drug addicts . . . from buying, owning, or possessing firearms" in order to "reduc[e] the danger of crime" and protect society from "firearms misuse." (Doc. 61 at 5 citing *Huddleston v. United States*, 415 U.S. 814, 828 (1974) (quoting 114 Cong. Rec. 21784 (1968) (statement of Rep. Emanuel Celler)) and *United States v. Yancey*, 621 F.3d 681, 683-84 (7th Cir. 2010).) Ample evidence exists that Congress perceived unlawful drug users to present a "special danger of misuse" for firearm possession.

    *Duarte* and *Stennerson* do not explicitly foreclose an as applied challenge to § 922(g), yet the decisions functionally prevent the success of an as applied

challenge to these provisions. *Duarte* and *Stennerson* conclude that it falls within our history and tradition to inflict categorical disarmaments on groups deemed dangerous by the legislature. These holdings realistically limit as applied challenges to § 922(g) to claims that a defendant should not be considered as part of the group deemed dangerous. In other words, Ninth Circuit jurisprudence seems to suggest that the only potential as applied challenge by a person charged under § 922(g)(3) would be to argue that they do not qualify as a drug user under the statute. Devine does not appear to be making such a challenge and Ninth Circuit precedent functionally forecloses any other as applied challenge.

*Stennerson* further concluded that our nation's tradition supports at least restricting possession of firearms by those who presently are intoxicated. 150 F.4th at 1285. Applying *Stennerson*'s holding to the facts of this case, § 922(g)(3) appears to be constitutional as applied to Devine as he tested positive for fentanyl, methamphetamine, and alcohol at the time of the arrest. The record contains no indication of the levels of these substances in Devine's system or to what extent he was intoxicated. The available facts prove sufficient to preliminarily indicate that Devine appeared intoxicated at the time regardless of whether he was "sleeping" or "had passed out" in his vehicle.

The congressional record and case law also indicate that similar logic supports restricting possession of firearms for those people addicted to illegal

drugs, regardless of whether they are presently intoxicated. Courts have cited studies that recognize the "connection between illegal stimulant use and violence as well as economically motivated violence by drug addicts." *Yancy*, 621 F.3d at 686. The Court finds that the principles and reasoning of *Stennerson*, *Duarte*, *Rahimi*, and *Bruen* demonstrate that § 922(g)(3) is constitutional as applied to Devine. The Court will address the additional arguments made by the parties.

    II.    <u>Third Circuit Factors</u>

The Court instructed the parties to submit supplemental briefing addressing the *Harris* factors as applied to Devine. The Third Circuit in *Harris* determined that "history and tradition justify § 922(g)(3)'s restrictions on those who pose a special danger of misusing firearms because they frequently use drugs." *Harris*, 144 F.4th at 156. The Third Circuit remanded the case to the district court as it concluded that it lacked "enough facts to tell whether the law's restrictions [were] constitutional as applied to [the defendant.]" *Id*. The Third Circuit identified several, non-exhaustive factors for the district court to consider in assessing "how [the defendant's] drug use affected his mental state and riskiness." *Id*. at 165. The following factors would be relevant:

- The length and recency of the defendant's use during and shortly before his gun possession;
- The drug's half-life;
- Whether use of the drug affects a person's judgment, decision-making, attention, inhibition, or impulse control;

- Whether the drug may induce psychosis;
- The drug's interference with a user's perception of his own impairment; and
- The long-term physical and mental effects of the use of that drug.

*Id*. *Harris* instructs future courts confronting § 922(g)(3) challenges to consider these factors "in determining whether someone's drug use suggests that he 'likely poses an increased risk of physical danger to others if armed.'" *Id*. (quoting *Pitsilides v. Barr,* 128 F.4th 203, 212 (3d Cir. 2025)).

The Government argues that Ninth Circuit precedent directly conflicts with the type of individualized approach outlined in *Harris*. (Doc. 61 at 8.) The Government asserts that the en banc majority in *Duarte* "recognized that the historical analysis called for by the Supreme Court 'may allow greater regulation than would an approach that employs means-end scrutiny with respect to each individual person who is regulated,' but that is merely 'the fruit of *Bruen*'s constitutional test.'" 137 F.4th at 762 [internal citation omitted].

The Government also contends that it would be inappropriate to conduct such a fact-based, individualized analysis pre-trial. (Doc. 61 at 9-10, citing Fed. R. Crim. P. 12(b)(3), *United States v. Pope*, 613 F.3d 1255, 1261-63 (10th Cir. 2010) (Gorsuch, J.), and *United States v. Grubb*, 135 F.4th 604 (8th Cir. 2025).) Devine contends that the Court appropriately can make factual findings for the purposes of his as applied challenge through an evidentiary hearing like the common practice

10

for hearings on motions to suppress. The Court remains troubled by the lack of procedural guidance as to this approach. The Third Circuit in *Harris* remanded the case to the district court to make factual findings on the factors, yet it provided no direction on *how* to develop the factual record.

    Federal Rule of Criminal Procedure 12 governs pretrial motions in a criminal case. Rule 12(b)(1) provides that a party may raise by pretrial motion any defense that "the court can determine without a trial on the merits." Under Rule 12(d), the court must resolve every pretrial motion before trial "unless it finds good cause to defer a ruling" and deferral will not "adversely affect a party's right to appeal." *Grubb* discussed this rule, and the procedural issue associated with an as applied challenge requiring factual findings. 135 F.4th at 607. *Grubb* concluded that a "'trial on the merits' was [necessary] to decide [the defendant's] pretrial motion to dismiss the indictment." *Id*. *Grubb* determined that "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *Id*. (quoting *Pope*, 613 F.3d at 1259 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969))).

    A pretrial resolution would be appropriate only when the parties have agreed to stipulated facts such that the factual evidence stands undisputed. Nothing requires the Government to present all the evidence in its case at this point in the

11

litigation. *Grubb* reasoned that given the uncertain legal universe and the standards of Rule 12, "the government is entitled at this juncture to make a fulsome record on facts surrounding the commission of the offense and any other facts that may be relevant to resolving a constitutional challenge to § 922(g)(3)." 135 F.4th at 608.

The Court finds persuasive the reasoning in *Grubb*. The Court also remains bound by *Duarte*, yet it will address the *Harris* factors to be thorough and avoid future litigation should the U.S. Supreme Court determine an individualized analysis would be required. The Court will run through each of the *Harris* factors in turn.

      a. <u>The length and recency of the defendant's use during and shortly before his gun possession</u>

Devine contends that the Government has not proffered evidence of the length of Devine's alleged firearm possession from which to assess Devine's drug use "during and shortly before" possessing the firearm. (Doc. 58 at 3.) Devine admits that the Government provides evidence of positive test results for alcohol, methamphetamine, and fentanyl on the day Devine was arrested. (*Id*.) Devine also admits that he had relapsed a few months before his arrest after more than 7 years of sobriety. (*Id*.) Devine concedes that he had been using heavily both on the day of his arrest and during the few months leading up to his arrest. (*Id*.)

      b. <u>The drug's half-life</u>

The elimination half-life of fentanyl is 3-4 hours, or 7-12 hours, and is administration dependent. (Doc. 58 at 4.) The mean elimination half-life of methamphetamine is ten hours. (*Id*.) The elimination half-life of alcohol is four to five hours. (*Id*.)

    c. <u>Whether use of the drug affects a person's judgment, decision-making, attention, inhibition, or impulse control & whether the drug may induce psychosis</u>

Devine admits that alcohol and methamphetamine can affect a person's judgment, decision-making, attention, inhibition, or impulse control. (Doc. 58.) Devine asserts that some "short-term symptoms of alcohol use as identified by the National Center for Biotechnology Information [include the following]: Injuries and risky behavior, memory and concentration problems, coma, confusion, impaired judgment and motor skills, emotional volatility, loss of coordination, visual distortions, changes in mood and behavior." (*Id*.) Devine contends that chronic methamphetamine use can cause "paranoia and aggression, and delusions and hallucinations." (*Id*.) Devine argues that "neither psychosis nor specific effects on judgment, decision-making, inhibition or impulse control are identified as effects on the body from fentanyl ingestion." (*Id*.) Devine instead states that the side effects of fentanyl primarily include relaxation, euphoria, pain relief, drowsiness, nausea, and confusion, among others. (*Id*.)

13

      d. <u>The drug's interference with a user's perception of his own impairment</u>

Devine argues that the parties presented no evidence on the degree to which "fentanyl, methamphetamine and alcohol, interfere *collectively* with a user's perception of his own impairment, though it is acknowledged most substances interfere generally with the ability to perceive the user's own level of impairment." (Doc. 58 at 6.) [emphasis in original].

      e. <u>The long-term physical and mental effects of the use of that drug</u>

Devine concedes that the long-term physical effects of opioid use are negative, but he asserts that the long-term mental effects are less obvious. (Doc. 58 at 6.) Devine also concedes that chronic methamphetamine use can lead to symptoms including paranoia and aggression, as well as hallucinations and delusions. (*Id*.)

      f. <u>Conclusion on *Harris* Factors</u>

The Government provides little to no argument on the specific application of the *Harris* factors to this case. The Court finds that the scant argument made by the parties provides sufficient information for a finding on § 922(g)(3)'s constitutionality as applied to Devine. Devine tested positive for methamphetamine, alcohol, and fentanyl at the time of his arrest. These lab reports

14

provide sufficient information, absent evidence presented to the contrary, that Devine was intoxicated during and immediately before his arrest.

The available information also indicates that Devine had been struggling with heavy substance use for several months leading up to the arrest. It is both common sense and scientifically proven, that methamphetamine, alcohol, and to some extent, fentanyl, all have serious effects on a person's judgment, decision-making, attention, inhibition, and impulse control. Methamphetamine, at least when used regularly, can induce psychosis. Each of these drugs interferes with a user's perception of his own impairment. Each one of these drugs also causes some form of long-term effects whether physical or mental. The Court finds that the *Harris* factors demonstrate that § 922(g)(3) is constitutional as applied to Devine.

## CONCLUSION

The Court finds that § 922(g)(3) is constitutional as applied to Devine based both on the reasoning and principles employed in *Stennerson* and *Duarte*, and on the *Harris* factors. Ample evidence exists in our nation's history and tradition of categorical bans on classes of people whom the legislature deemed dangerous. Congress considered people suffering drug addiction to fall into a class of people who presented a "special danger of [firearm] misuse." *Harris*, 144 F.4th at 156. The Court will deny Devine's motion to dismiss the indictment.

15

Accordingly, **IT IS ORDERED** that Devine's motion to dismiss the indictment (Doc. 36) is **DENIED.**

DATED this 12th day of December, 2025.

_____
Brian Morris, Chief District Judge
United States District Court